## SUCCESSION OF MONTGOMERY.

An appeal from the Probate Court of the parish of Madison, allowed in November, 1845, was properly made returnable to the Supreme Court *at Alexandria*. The 149th art. of the constitution, which provides that appeals from that parish shall be returned to New Orleans, was inoperative until the constitution was proclaimed, on the 2d of December of that year. Const. art. 150.

On an appeal from a judgment on an opposition to a tableau of distribution presented by the curator of a succession, absent creditors who never appeared in the court below, nor ever claimed to be acknowledged as creditors, and who were placed on the tableau by the curator for the protection of his own interest, as a surety of the deceased, need not be made appellees, though their claims were opposed by the appellants. It is enough that the curator, who is the real appellee, be cited.

Where a deed of trust has been executed in another State for the purpose of protecting a surety against any loss in consequence of his suretyship, the latter, if legally liable, is not bound to wait until he has actually paid as surety, before he can require the trust fund to be applied to the payment of the principal obligation, so as to effect his release. And where the principal has died, and the liability of the surety is contested, the trust fund may be withheld from distribution, for a reasonable time, until it can be ascertained whether the surety will be liable or not. C. C. 3026.

The omission to state in a mortgage of slaves their "age's and nations," will not render the mortgage null. C. C. 3273, 3274.

Slaves in possession of a mortgagor at the time of his death, of the same names with those enumerated in a mortgage executed by him, will be presumed to be the same. It is for the party who denies that they are the same, to establish that they are not.

It is not necessary that the register of mortgages, on registering an original act, not authentic, upon his own knowledge of the signatures of the parties, should certify upon his records that he knew their signatures.

APPEAL from the Court of Probates of Madison, *Downes*, J. *Stockton* and *Steele*, for the appellants. *Downes*, contrâ. The judgment of the court was pronounced by

SLIDELL, J. There is a motion by the curator of the succession to dismiss the appeal in this case, on two grounds:

I. That the appeal was not made returnable to the place required by law.

The judgment was rendered by the Probate Court of the parish of Madison, and the appeal was granted on the 22d November, 1845, returnable to Alexandria. Alexandria was, at the time, the proper place to which to make the appeal returnable. By the 149th article of the constitution, appeals from the parish of Madison were directed to be returnable to New Orleans. This constitution was adopted in convention, on the 14th May, 1845. But article 150 required that its adoption or rejection should be submitted to the vote of the people, on the first monday of the ensuing November; that the returns of votes should be examined by the governor and certain other officers, on the first monday of December ensuing; that, if there should be found a majority for its adoption, it should be the duty of the governor to make proclamation of that fact, "and thenceforth this constitution shall be ordained and established as the constitution of the State of Louisiana." This proclamation was made on tuesday, the second day of December, 1845. The constitution not having gone into effect at the date of the order of appeal, the objection is not well taken.

II. That the creditors whose claims have been opposed by the appellants, are not made parties to this appeal. These creditors never appeared in the court

below, never made any application to the curator to be acknowledged as creditors, and were absentees. The curator voluntarily placed the.n on the tableau for the protection of his own interests, as *Montgomery's* surety, as will be more fully noticed hereafter. The curator is the real appellee, and he is before us. The motion to dismiss is therefore rejected.

The opponets claimed to be creditors of the succession, and that they are so is not disputed in argument by the appellee. The whole of the proceeds of the property of the succession, after deduction of certain expenses of administration, were awarded by the tableau to *Wm. M. Taylor* and *James W. Gillespie*, as mortgage creditors; the former for a claim of $5,000 and interest, and the latter for a claim of $8021 and interest.

The position taken by the curator, *William Jenkins*, is, that these debts are entitled to a mortgage preference, because they are covered by a deed of trust executed by *Montgomery*, in Mississippi, on certain slaves, of which those sold at the succession sale formed part, to a trustee in trust to secure *Jenkins* and another, and hold them harmless from all damages, costs and charges, and loss, for and on account of their liability as sureties of *Montgomery*, on a certain bill single, executed by *William Montgomery*, the deceased, together with *William Jenkins* and *James Jenkins*, in favor of *Taylor*, for $5,000, and on a certain promissory note made by *Montgomery* and *William Jenkins*, in favor of *James Gillespie*, for $8,021 24; that judgment has been obtained against *William Jenkins* on both claims; that upon one judgment a levy has been made on his property in Mississippi, and on the other a writ of error is pending. That this deed of trust was duly recorded in the parish of Madison.

We will now proceed to consider, in the order in which they have been presented by counsel, the objections made to the judgments rendered by the court below in favor of *Taylor* and *Gillespie*.

There is no proof in the record that *Taylor* is a creditor of *Montgomery*. It is shown by a transcript of a suit in Mississippi, that one *Dillingham* had brought suit on the bill single above mentioned, against *Montgomery* and *Wilham Jenkins*, and obtained judgment against them for the balance due upon it. Upon this judgment a writ of error was taken, the result of which does not appear.

It is said that there is a variance between the debt to *Gillespie*, as stated on the tableau, and that shown by the transcript of the suits of *Gillespie v. Montgomery* and *William Jenkins*. In one it is stated as $8,021; in the other, the note sued upon is for $8,021 24. This would perhaps be too trifling a variance to be regarded, if it stood alone. But there is a discrepancy in other respects between the note itself and that described in the deed of trust. The note is dated 26th January, 1841, and payable on or before the 26th January, 1842. The note mentioned in the deed of trust is described as dated the 6th February, 1841, and payable at twelve months after date. It would seem from the Mississippi record that the note sued upon had been given for the price of land, while that described in the deed of trust is said to have been given for money loaned.

It is said that, even if the bill single and the note are those contemplated in the deed of trust, yet the holders of those obligations are not the beneficiaries in the deed, nor have they claimed its benefit, but the curator himself has volunteered to place them on the tableau.

It is true the holders of those obligations have not appeared in the cause, but as we have come to the conclusion that this case must be romanded with in-

structions to file a new account and tableau, and they may perhaps avail themselves of the opportunity which will thus be afforded for all creditors to come in, we do not think it proper to express now a definitive opinion with regard to their rights.   The opponents have made no objection to the form in which this foreign instrument was executed, and we have no evidence before us to show what right under it would accrue by the laws of Mississippi, to the creditors by reason of the security given by the principal debtor to his sureties.

Whether the holders of obligations mentioned in the deed of trust be entitled to its benefit or not, there can be no doubt that *William Jenkins* was a beneficiary under it.   Its object was to hold him harmless against loss or damage by reason of his suretyship.  Under such a contract, we are of opinion that he is not bound to wait till he has actually paid as surety.   If he be legally liable as the surety, he is entitled to have the fund conveyed for his indemnity applied to the payment of the principal obligation, so as to effect his release.   As the liability however is contested, we think the fund, now in the custody of the probate court, should be, *pro tanto*, withheld from distribution for a reasonable time, that the writ of error may be disposed of in Mississippi, where the suit against him is now pending, and it may be ascertained whether he is legally liable, or not, on the bill single for $5,000, mentioned in the deed of trust.   See Civil Code, art. 3026.

It is said that the deed of trust cannot have validity as a mortgage in this State, because the ages and nation of the negroes are not mentioned.   The deed of trust states only the names and sex of the negroes.   The counsel relies on article 3274 of the Civil Code, which declares that if the mortgage be of slaves, "their names, sex, and, as nearly as may be, their age and nation, must be mentioned in the act of mortgage, that their persons may be more easily identified."   The point now raised, so far as our researches have gone, has never been decided.   After a careful consideration, we are of opinion that the omission to state the ages and country of slaves mortgaged does not affect the mortgage with nullity.   A difference of phraseology will be remarked between this article and that which precedes it, prescribing what is necessary in the description of "immovables," by which is there meant landed property.   We know that in the practice of notaries and parish judges, it has been very common to omit the full and complete description in sales and mortgages of slaves, which the appellants say is required on pain of nullity.   This long practice and contemporaneous professional interpretation being not manifestly erroneous, is entitled to great weight.   Immense amounts of slave property have been sold and mortgaged under descriptions of the same character as that now in question, and we should do great injustice, were we, in the interpretation of an ambiguous clause, to reject the popular acceptation.

The identity, however, is a lawful subject of enquiry.   The appellants have a right to show that the negroes of like names, possessed, inventoried, and sold as the property of the succession, are not the same as those conveyed by the deed of trust.   The identity of name and the possession establish a case in favor of the mortgagee, which it is incumbent on the opposing creditor to disprove.

It is contended that the register of mortgages had no right to register the deed of trust which was not an authentic act, unless he was acquainted with the signature of the parties, and agreed on his own responsibility to make the inscription on presentation of the original act, in which case it is said that the re-

SUCCESSION   gister should certify such knowledge upon his record.  The original deed was
OF   presented to the recording officer, and, as we said in the case of *Ells* v. *Sims*,
MONTGOMERY.
*ante* p. 251, we do not consider it necessary that the register should certify on
his record that he knew the signatures.

This transcript comes before us in a very imperfect form.  None of the pro-
ceedings anterior to the filing of the tableau are transcribed, nor are they noticed
in the statement of facts.  We have not the inventory nor the *procès-verbal* of
the probate sale, nor are we informed when the succession was opened.  The
opponents charged expressly that the tableau was filed prematurely; there is no
evidence to contradict the charge, but, on the contrary, indications of an attempt
to close the estate precipitately.  We are unwilling to conclude creditors upon
a showing so loose.  We think a new account and tableau should be filed, so
that all the creditors may have a fair opportunity to come in and be heard.

It is therefore ordered that the judgment of the court below be reversed ;
that this cause be remanded with instructions to the court below to require a
new account and tableau, to be filed by the curator, and for further proceedings
according to law ; the appellee paying the costs of this appeal.